IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| LEINER LEONEL GUAILLAS GUAMAN,<br><br>    Petitioner,<br><br>vs.<br><br>PAMELA BONDI, Attorney General; KRISTI NOEM, Secretary, U.S. Department of Homeland Security; TODD M. LYONS, Acting Director of Immigration and Customs Enforcement; and DAVID EASTERWOOD, Acting Director, St. Paul Field Office Immigration and Customs Enforcement,<br><br>    Respondents. | Case No. 0:26-cv-01062-SHL-DTS<br><br>**ORDER GRANTING IN PART VERIFIED PETITION FOR WRIT OF HABEAS CORPUS** |

**I.      INTRODUCTION.**

Petitioner is a native and citizen of Ecuador who has been present in the United States since 2021. He was arrested by federal agents on February 4, 2026. Respondents assert that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2) without the opportunity for a bond hearing. For reasons set forth below, the Court disagrees and therefore GRANTS IN PART the Verified Petition for Writ of Habeas Corpus. (ECF 1.) The Court ORDERS that Respondents provide Petitioner with a bond hearing within seven days before an Immigration Judge pursuant to 8 U.S.C. § 1226(a). The issue of bond or detention must be decided on the merits. The Immigration Judge may not conclude that there is no jurisdiction to order bond.

**II.     FINDINGS OF FACT.**

Respondents largely do not dispute the facts in the Verified Petition, and thus the Court accepts them as true except where Respondents have presented contrary evidence. Petitioner is a citizen of Ecuador who has lived in the United States since 2021. (ECF 1, ¶¶ 12–13.) He does not say whether there are removal proceedings pending against him, but he does allege that he is not subject to a final removal order. (Id., ¶¶ 13, 20, 43.) On February 4, 2026, Petitioner was arrested by federal agents. (Id., ¶ 15.) He alleges that there was no warrant for his arrest (id., ¶ 52), although Respondents disagree and attach a copy of a warrant signed by Petitioner and dated February 4, 2026 (ECF 4-1). Upon being taken into custody, Petitioner was detained at the Bishop Henry

Whipple Federal Building in Bloomington, Minnesota. (Id., ¶ 14.) Petitioner sues Respondents in their official capacities, seeking, among other forms of relief, immediate release from custody. (Id., pp. 14–15.)

On February 5, 2026, the Court entered an Order to Show Cause requiring Respondents, among other things, to "certify[] the true cause and proper duration of Petitioner's confinement" and explain "[w]hether Petitioner was arrested pursuant to a warrant and, if so, [provide] a copy of such warrant." (ECF 3.) Respondents responded to the Petition with a *pro forma* response stating that they "assert all arguments raised by the government in *Buenrostro-Mendez* [*v. Bondi*, No. 25-20496, 2026 WL 323330, --- F.4th ---- (5th Cir. Feb. 6, 2026)] and in *Avila* [*v. Bondi*, No. 25-3248 (8th Cir. docketed Nov. 10, 2025)], preserve those arguments for any appeal in this case, and respectfully request that the Court deny Petitioner's habeas petition." (ECF 4.) As noted above, Respondents also attached the warrant dated February 4, 2026, and signed by Petitioner. (ECF 4-1.) The warrant states that there is probable cause to believe Petitioner "either lacks immigration status or notwithstanding such status is removable under U.S. immigration law." (Id.) According to the warrant, the probable cause determination is based on "biometric confirmation of the subject's identity and a records check of federal databases" and/or "statements made voluntarily by the subject to an immigration officer and/or other reliable evidence." (Id.)

### III. HABEAS CORPUS STANDARDS.

Petitioner is entitled to writ of habeas corpus if, as relevant here, "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Th[e] right [of habeas corpus] extends to those persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citing *Demore v. Kim*, 538 U.S. 510, 517 (2003) and *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001)). Petitioner bears the burden of proving by a preponderance of the evidence that his detention is unlawful. *See Walker v. Johnston*, 312 U.S. 275, 286–87 (1941); *see also Bradin v. U.S. Prob. & Pretrial Servs.*, No. 22-3032, 2022 WL 1154622, at *3 (D. Kan. Apr. 19, 2022) (collecting cases).

### IV. LEGAL ANALYSIS.

A. *Petitioner Is Governed by 8 U.S.C. § 1226(a), Not 8 U.S.C. § 1225.*

Although the factual record is sparse, it appears that there has not been a removal proceeding pending against Petitioner prior to now. Accordingly, the crucial question is whether

Petitioner is subject to mandatory detention as an "applicant for admission" under 8 U.S.C. § 1225(a) and (b)(2). Section 1225(a)(1) defines "applicant for admission" to mean "[a]n alien present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1). Detention of such an alien is mandatory pursuant to § 1225(b)(2)(A), subject only to "temporar[y] release[] on parole 'for urgent humanitarian reasons or significant public benefit.'" *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (quoting 8 U.S.C. § 1182). Respondents argue that Petitioner is an "applicant for admission" under § 1225(a) and (b)(2) and therefore is not entitled to an immigration bond hearing. (ECF 8, p. 8.) Petitioner, by contrast, argues that he is at minimum entitled to a bond hearing pursuant to 8 U.S.C. § 1226(a), which addresses the arrest, detention, and release of "an alien" in connection with removal proceedings. The Supreme Court has held that § 1226(a) applies to "aliens already in the country." *Jennings*, 583 U.S. at 289.

The threshold problem with Respondents' position is that it treats every person who enters the country without legal status as an "applicant for admission." *See Helbrum v. Williams Olson*, No. 4:25-cv-00349, 2025 WL 2840273, at *4 (S.D. Iowa Sept. 30, 2025); *Barrajas v. Noem*, No. 4:25-cv-00322, 2025 WL 2717650, at *4–5 (S.D. Iowa Sept. 23, 2025); *Hasan*, 800 F. Supp. 3d 641, 651–57 (E.D. Va. 2025); *Romero v. Hyde*, 795 F. Supp. 3d 271, 281–88 (D. Mass. 2025). Such an interpretation of § 1225 would render substantial portions of § 1226 superfluous by making "detention [] mandatory for nearly every noncitizen who has entered the United States illegally." *Hasan*, 800 F. Supp. 3d at 655–56. If this is what Congress intended, it does not make sense that it would have passed a separate provision as part of the same statutory scheme that specifically contemplates bond hearings except in enumerated situations. *See id.*; 8 U.S.C. § 1226(a). It is especially difficult to square the Federal Respondents' interpretation of § 1225(b)(2)(A) with Congress's recent decision to pass the Laken Riley Act to expand the scope of mandatory detention under § 1226(a). *See Barrajas*, 2025 WL 2717650, at *4; *Romero*, 795 F. Supp. 3d at 286–87. Under the Federal Respondents' interpretation of the interplay between §§ 1225 and 1226, substantial portions of the Laken Riley Act are meaningless because the persons subject to mandatory detention under the Laken Riley Act would have been subject to mandatory detention even without the Act simply by virtue of having entered the country without lawful authority. This is not how statutes are to be interpreted. "One of the 'most basic interpretive canons' is that 'a statute should be construed so that effect is given to all its provisions,' and 'no

3

part will be inoperative or superfluous, void, or insignificant.'" *Hasan*, 800 F. Supp. 3d at 656 (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)).

The strength of Petitioner's position on this issue is illustrated by the fact that most district courts have agreed with it. *See Helbrum*, 2025 WL 2840273, at *4; *Barrajas*, 2025 WL 2717650, at *4; *Hasan*, 800 F. Supp. 3d at 651–57; *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1150–53 (D. Minn. 2025); *Romero*, 795 F. Supp. 3d at 281–88. Granted, a significant minority of courts have come out differently. *See Vargas Lopez v. Trump*, 802 F. Supp. 3d 1132, 1140–43 (D. Neb. 2025); *Chavez v. Noem*, 801 F. Supp. 3d 1133, 1140–41 (S.D. Cal. 2025). This includes a recent 2–1 panel decision from the United States Court of Appeals for the Fifth Circuit. *Buenrostro-Mendez*, 2026 WL 323330, at *1–10. The weight of authority, however, remains on Petitioner's side. *See Barrajas*, 2025 WL 2717650, at *4 ("The overwhelming majority of these courts have concluded that aliens in Petitioner's situation are governed by § 1226(a) and therefore entitled to bond hearings."). This Court will continue to follow the weight of authority and therefore concludes that Petitioner's case is governed by § 1226(a), not § 1225. Meaning: Petitioner is not subject to mandatory detention.

   B.  *Petitioner Must Be Given a Bond Hearing Before an Immigration Judge.*

The remaining question is whether to order immediate release or to give Petitioner a bond hearing before an Immigration Judge. The Court has the authority to do either one. *Demore*, 538 U.S. at 517 (recognizing that § 1226(e) "contains no explicit provision barring habeas review"). Respondents argue that even if § 1226(a) is governing, the most the Court should do is order a bond hearing given the existence of an arrest warrant. Petitioner, by contrast, argues that Respondents have not complied with governing law in connection with the warrant and thus that he should be immediately released. He raises three arguments in this regard: (1) the warrant was not issued or served at the correct time; (2) the warrant lacks sufficient evidentiary basis; and (3) the warrant was not served by a qualified individual under 8 C.F.R. § 287.5(e)(3).

The Court rejects the second argument because the warrant, although a simple "check-box" document, states that probable cause exists to believe Petitioner lacks legal status in the United States based on "biometric confirmation of the subject's identity and a records check of federal databases" and/or "statements made voluntarily by the subject to an immigration officer and/or other reliable evidence." Because Petitioner's own Verified Petition appears to acknowledge that he lacks legal status—or, at least, does not allege that he *has* legal status—he has fallen short of

4

meeting his burden of proving that detention is unlawful based on insufficient evidence to issue the warrant.

The record likewise falls short as to Petitioner's third argument regarding the qualifications of the arresting officer to issue a warrant, as required by 8 C.F.R. § 287.5(e)(3). Petitioner's "evidence" consists primarily of media reports suggesting that some ICE agents lack proper training. This is not enough to meet his burden of proving that the issuing officer for his warrant lacked sufficient training, even acknowledging that the issuing officer's name is illegible.

Petitioner's first argument—regarding the timing of the warrant—requires more attention because it highlights an ambiguity in immigration laws and regulations. On one hand, § 1226(a) states that the Attorney General must issue a warrant before an alien may be arrested and detained. Moreover, 8 C.F.R. § 236.1 states that an arrest warrant may be issued "[a]t the time of issuance of the notice to appear, or at any time thereafter." Read together, these provisions appear to require the issuance of an arrest warrant (i) before the arrest itself, but (ii) not until a notice to appear has been filed. This gives Petitioner a plausible basis for arguing that an arrest warrant that post-dates his arrest is improper.

On the other hand, 8 U.S.C. § 1357(a) establishes that an immigration officer has the power to act without a warrant in some circumstances, including, as relevant here, the power to:

> arrest any alien who in his presence or view is entering or attempting to enter the United States . . . or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States . . . .

*Id.* § 1357(a)(2). In turn, 8 C.F.R. § 287.3(a) states that the "examination" referenced in § 1357(a)(2) shall be made "by an officer other than the arresting officer. If no other qualified officer is readily available and the taking of the alien before another officer would entail unnecessary delay, the arresting officer, if the conduct of such examination is a part of the duties assigned to him or her, may examine the alien." Section 287.3(d) then states that except in extraordinary circumstances or where voluntary departure has been granted, a determination must be made within forty-eight hours "whether the alien will be continued in custody or released on

5

bond and recognizance and whether a notice to appear and warrant of arrest as prescribed in 8 CFR parts 236 and 239 will be issued."

Parsing the language, these provisions give an immigration officer the authority to make a warrantless arrest if: (i) the officer has reason to believe the alien is in the United States without lawful status; (ii) the officer has reason to believe the alien is likely to escape before a warrant can be obtained for his arrest; (iii) the alien is taken without unnecessary delay for examination before a qualified immigration officer; (iv) the examining officer is different than the arresting officer unless no such person is "readily available;" and (v) a determination is made within forty-eight hours whether a notice to appear and arrest warrant will be issued.

Petitioner has raised genuine questions about whether the arresting officer had a lawful basis for warrantless arrest under § 1357(a)(2) and, if so, whether there was full compliance with the requirements of that statute and 8 C.F.R. § 287.3(d). The problem, however, is that Petitioner's position rests on the premise that the warrant was issued after his arrest. The Court cannot tell from the existing record whether this is true given that both occurred on the same day. Accordingly, Petitioner has not met his burden of proving the unlawful nature of his detention based on the timing of the arrest warrant in relation to his arrest.

Relatedly, the record does not establish whether a Notice to Appear has been issued. In other words, the Court cannot tell if there is a pending removal proceeding. If not, Petitioner's detention is unlawful, and he must be immediately released. *See Arias v. Rogers*, 676 F.2d 1139, 1142 (7th Cir. 1982) ("If the petitioners had been arrested illegally by INS officers and carted off to jail and the INS had made no move to begin deportation proceedings, the petitioners would have been entitled to obtain their freedom through a habeas corpus proceeding because their detention would have violated the Fourth Amendment . . . ."). If so, Petitioner's detention is lawful if (a) the notice to appear was issued at the same time as the arrest warrant, or (b) the notice to appear was issued within forty-eight hours of a warrantless arrest *and* the immigration officer had reason to believe Petitioner was likely to escape before the warrant could be obtained *and* Petitioner was taken without unnecessary delay for examination before a qualified officer.

Given the lack of clarity in the existing record, the Court cannot conclude that Petitioner has met his burden of proving that his ongoing detention is unlawful based on the timing or circumstances of the warrant. Thus, for now, the Court will GRANT IN PART the Verified Petition for Writ of Habeas Corpus and ORDER that Petitioner be given an individualized bond hearing

within seven days in accordance with 8 U.S.C. § 1226(a). The Court will reconsider its decision and order immediate release if Petitioner presents sufficient evidence that there is no removal proceeding currently pending against him.

## V. CONCLUSION.

Based on the foregoing, IT IS ORDERED THAT:

1. Petitioner's Petition for Writ of Habeas Corpus (ECF 1) is GRANTED. Within seven days, Respondents must provide Petitioner with an individualized bond hearing governed by 8 U.S.C. § 1226(a). The Immigration Judge must decide the issue of bond or detention on the merits and may not conclude that jurisdiction to order bond does not exist.

2. Within fourteen days, one or both Parties must file a notice confirm that Petitioner has been granted the individualized bond hearing required by this Order. The notice should also state the outcome of the hearing.

**IT IS SO ORDERED.**

Dated: February 12, 2026

_____
STEPHEN H. LOCHER
U.S. DISTRICT JUDGE